**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

KIFFANY L. MCCASKILL,　　　　*
　　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　　*
　　　　　　　　　　　　　　　*
vs.　　　　　　　　　　　　　*　CIVIL ACTION NO. 18-00474-B
　　　　　　　　　　　　　　　*
ANDREW M. SAUL,　　　　　　　*
Commissioner of Social　　　*
Security,　　　　　　　　　　*
　　　　　　　　　　　　　　　*
　　　　Defendant.　　　　　　*

## ORDER

Plaintiff Kiffany L. McCaskill (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 28, 2019, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docs. 17, 18). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I. __Procedural History__[1]

Plaintiff protectively filed her applications for benefits on June 18, 2015, alleging disability beginning November 20, 2012, based on rheumatoid arthritis, fibromyalgia, lupus, anxiety, a nerve problem, and a sleep problem. (Doc. 12 at 234, 236, 243, 265). Plaintiff's alleged onset date was later amended to February 6, 2014. (Id. at 16, 46, 183-85). Plaintiff's applications for benefits were initially denied and, upon timely request, she was granted an administrative hearing before Administrative Law Judge Robert Waller (hereinafter "ALJ") on March 15, 2017. (Id. at 74, 122, 127, 134, 148). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 76-84). A supplemental hearing was held before the ALJ on October 25, 2017. (Id. at 42). Plaintiff attended the supplemental hearing with her counsel and provided testimony related to her claims. (Id. at 51-68). A medical expert and a vocational expert (hereinafter "VE") also testified at the supplemental hearing. (Id. at 44-50, 68-72). On January 10, 2018, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 16-33). The Appeals Council denied Plaintiff's request for review on September 14, 2018. (Id. at 7). Therefore, the ALJ's

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

decision dated January 10, 2018, became the final decision of the Commissioner. (Id.).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on October 31, 2019 (Doc. 19), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. **Issue on Appeal**

> 1. **Whether the ALJ reversibly erred in according little weight to the opinions of the consultative rheumatology examiner and according great weight to the opinions of the non-examining medical expert?**

## III. **Factual Background**

Plaintiff was born on February 21, 1984 and was thirty-three years of age at the time of her supplemental hearing on October 25, 2017. (Doc. 12 at 51). At that hearing, Plaintiff testified that she was 6'1 and weighed 175 pounds. (Id. at 52). Plaintiff reported that she lived in a house with her thirteen-year-old son and four-year-old daughter. (Id.).

Plaintiff graduated high school and was always in regular classes. (Id. at 53, 266, 1009). Plaintiff last worked cleaning commercial buildings in 2012. (Id. at 53-54). She has also worked as a fast food cashier, a fast food cook, a hospital housekeeper, and a warehouse worker. (Id. at 54-56, 69).

Plaintiff testified that she can no longer work because of

lupus, which "bothers [her] head pain" and her joints, back pain, leg pain, knee pain, ankle pain, weakness in her hands, migraine headaches, and high blood pressure, which causes dizzy spells. (Id. at 56-62).  Plaintiff testified that her pain medications provide some relief, bringing her pain down to a five or six on a scale of ten.  (Id. at 58-59).  Plaintiff further testified that she is currently prescribed Guanfacine, Cyclosporine, magnesium gluconate, vitamin D, Hydroxychloroquine, Lyrica, and Hydrocodone, and that, while the medications helped, one of them caused her to have bad headaches.  (Id. at 61).  She also reported that she had recently started traveling to Birmingham every other week for Benlysta infusions to treat her lupus, but the infusions were not yet having any effect.  (Id. at 60-61, 66-67).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.

---

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

<u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.    <u>Statutory and Regulatory Framework</u>**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven

5

his or her disability.  See 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she is not engaged in substantial gainful activity.  Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[3]  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  Id.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.  If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four.  Id.  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work.  Carpenter, 614 F. App'x at 486.

---

[3] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  The ALJ's Findings**

In the case *sub judice*, the ALJ found that Plaintiff has the severe impairments of rheumatoid arthritis, lupus, irritable bowel syndrome, hypertension, abdominal pain, anxiety, depression, and migraines.  (Doc. 12 at 18).  The ALJ also found that Plaintiff has the non-severe impairment of gastroesophageal reflux disease, and that, pursuant to Social Security Ruling 12-2p, Plaintiff's alleged fibromyalgia is not a medically determinable impairment. (Id. at 19).  The ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Id.).

The ALJ further found that Plaintiff has the RFC to perform a range of sedentary work with the following additional limitations: she can lift/carry twenty pounds occasionally and ten pounds frequently; she can sit for six hours; she can stand and walk for three hours; she can frequently use hand controls with both upper extremities; she can frequently reach, handle, finger, and feel with both upper extremities; she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; she can frequently be exposed to unprotected heights and moving mechanical parts; she can frequently operate a commercial motor vehicle; she can frequently be exposed to humidity and wetness; she can occasionally be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat; she can be exposed to frequent vibration; her ability to understand, remember, and carry out instructions is limited to performing simple and routine tasks; her ability to use judgment is limited to simple work-related decisions; she can interact with supervisors and co-workers frequently and the public occasionally; and she can deal with occasional changes in the work setting. (Id. at 21-22).

Based upon the testimony of the VE, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a cashier,

industrial cleaner, hospital housekeeper, fast food cook, or warehouse worker; however, Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as dial marker, order clerk, and charge account clerk. (Id. at 32-33). Thus, the ALJ found that Plaintiff is not disabled. (Id. at 33).

## VII. Discussion

### A. Substantial evidence supports the ALJ's assessment of the medical opinion evidence.

Plaintiff's sole claim on appeal is that the ALJ erred in according great weight to the opinions of Allan D. Duby, M.D., the non-examining medical expert who testified at the supplemental administrative hearing, while giving little weight to the opinions of the examining rheumatologist, Richard Rex Harris, M.D. (Doc. 13 at 2-4). The Commissioner counters that the ALJ had good cause to afford little weight to Dr. Harris's opinions and adequately articulated good reason for weight assigned to the medical opinion evidence. (Doc. 14 at 3).

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS

12010, at *4, 2009 WL 413541, at *1 (M.D. Fla. Feb. 18, 2009).

The ALJ must give "substantial weight" to the opinion of a claimant's treating physician, unless "good cause" exists for not doing so. Costigan v. Comm'r, Soc. Sec. Admin., 603 F. App'x 783, 788 (11th Cir. 2015) (per curiam) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam)). "The opinion of a one-time examining physician" is not entitled to the same deference as that of a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, at *50, 2010 WL 989605, at *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an "ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (citing 20 C.F.R. § 404.1527(f)(2)(i)).

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006). "However, opinions of non-examining sources may override opinions from examining or treating sources, provided

that the non-examining source's opinion is supported by the evidence of record." Willis v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 84550, at *23, 2010 WL 3245449, at *7 (M.D. Fla. Aug. 17, 2010) (citations omitted); see Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (finding that the ALJ did not err in affording greater weight to the opinion of a non-examining neurologist than to the plaintiff's treating physicians because there was substantial evidence to support the ALJ's assessment); Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (per curiam) (holding that the ALJ did not err in crediting the opinions of non-examining physicians where their opinions were supported by the record and good cause existed for giving little weight to the treating physician's opinion); Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam) ("[B]ecause the ALJ articulated good cause for discounting the opinions of Flowers's treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion."); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Whether considering the opinions of treating, examining, or

non-examining physicians, good cause to discredit the testimony of *any* medical source exists when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, at *8, 2012 WL 3155570, at *3 (M.D. Ala. Aug. 3, 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock, 764 F.2d at 835 (citation omitted); see also Adamo v. Comm'r of Soc. Sec., 365 F. App'x 209, 212 (11th Cir. 2010) (per curiam) ("The ALJ may reject any medical opinion if the evidence supports a contrary finding.").

The record reflects that Dr. Harris performed a consultative rheumatology examination of Plaintiff on April 17, 2017, at the request of the State agency. (Doc. 12 at 998-99). Dr. Harris noted that Plaintiff complained of polyarticular pain in the hands, shoulders, knees, and feet, and of various skin lesions caused by her lupus. (Id. at 998). On examination, Plaintiff exhibited full range of motion of the neck, shoulders, elbows, wrists, fingers, hips, knees, and ankles, and minimal tenderness to palpation of the joints of the hands. (Id.). No evidence of redness, heat, or joint swelling was noted. (Id.). Dr. Harris observed that Plaintiff's grip strength and pinch strength were

3/5 bilaterally, upper and lower extremity reflexes were 1+ and equal, and sensation was normal in the upper and lower extremities. (Id. at 998-99). Plaintiff had diffuse tenderness to palpation in the lumbar spine area, and her lumbar flexion was eighty degrees, extension was twenty degrees, and lateral motion was twenty degrees. (Id. at 998). Plaintiff's gait was normal, and she could toe-and-heel walk, squat, and arise. (Id.). Dr. Harris noted "[i]ntact" for Plaintiff's neurological examination, and examinations of her head, eyes, ears, nose, throat, neck, chest, heart, and abdomen were likewise unremarkable. (Id. at 999). Dr. Harris did note skin lesions in Plaintiff's right trochanteric bursa area. (Id. at 998). He concluded that Plaintiff "has systemic lupus with hypertension with a history of depression and anxiety and cervical dysplasia." (Id. at 999).

Dr. Harris then completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Id. at 1000-05). In the statement, Dr. Harris opined that Plaintiff can lift and carry up to ten pounds occasionally but can never lift more than ten pounds, due to "polyarticular pain." (Id. at 1000). He also opined that Plaintiff can sit for fifteen minutes at one time without interruption, stand for fifteen minutes at one time without interruption, and walk for ten minutes at one time without interruption. (Id. at 1001). He further opined that Plaintiff is able to sit for a total of two hours, stand for a total of one

hour, and walk for a total of one hour in an eight-hour workday, and that Plaintiff must "stay home" for the remainder of the eight hours. (Id.). Dr. Harris also opined that Plaintiff can occasionally reach, handle, finger, feel, and push/pull with both upper extremities due to "polyarticular pain," and can operate foot controls occasionally with both lower extremities due to "back pain." (Id. at 1002). As to postural activities, Dr. Harris opined that "polyarticular pain" limits Plaintiff to occasional climbing of ramps and stairs, and to no balancing, stooping, kneeling, crouching, crawling, or climbing ladders or scaffolds. (Id. at 1003). With respect to environmental limitations, Dr. Harris opined that Plaintiff can have no exposure to unprotected heights or moving mechanical parts, and that she cannot operate a motor vehicle. (Id. at 1004). He also limited her to occasional exposure to humidity and wetness, extreme cold or heat, vibrations, and dust, odors, fumes, and pulmonary irritants, due to "polyarticular pain." (Id. at 1004). Finally, Dr. Harris stated that Plaintiff is unable to travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, prepare a simple meal and feed herself, sort, handle, or use paper/files, or perform activities like shopping, because of "polyarticular pain." (Id. at 1005).

Dr. Duby reviewed the medical evidence in Plaintiff's file

and testified at Plaintiff's supplemental hearing on October 25, 2017. (Id. at 44-50). At the hearing, Dr. Duby opined that Plaintiff has the impairments of systemic lupus erythematosus, headaches and migraines, fibromyalgia, irritable bowel syndrome, gastroesophageal reflux disease, and inappropriate use of medication, and that Plaintiff's impairments do not meet or equal any applicable listings but do cause some functional limitations. (Id. at 46). Dr. Duby opined that Plaintiff can lift and carry up to ten pounds frequently, lift and carry eleven to twenty pounds occasionally, and lift twenty-one to fifty pounds occasionally. (Id. at 47). He also opined that Plaintiff can sit for two hours at a time and for a total of six hours in a day, stand for one hour at a time and for a total of three hours in a day, and walk for one hour at a time and for a total of three hours in a day. (Id.).

Dr. Duby further opined that Plaintiff can frequently use hand controls, reach, handle, finger, and push and pull with both hands. (Id.). He also opined that Plaintiff can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can balance frequently, and can stoop, kneel, crouch, and crawl occasionally. (Id. at 48). With regard to environmental limitations, Dr. Duby opined that Plaintiff can have frequent exposure to unprotected heights, moving mechanical parts, and vibrations, occasional exposure to dust, fumes, pulmonary irritants, extreme heat, and

extreme cold, and can frequently operate a motor vehicle. (Id.).
Dr. Duby based his functional limitations on Plaintiff's fatigue,
arthritis, and headaches, and he stated that he believed "the
combination of those doesn't permit her to have unlimited
functioning." (Id.).

The ALJ afforded Dr. Harris's opinions little weight because
they were "not consistent with his own exam findings, the record
as a whole, or other opinions in the file." (Id. at 31).
Conversely, the ALJ afforded Dr. Duby's opinions great weight
because they were "consistent with the medical evidence of record."
(Id.). The ALJ also stated that Dr. Duby was well-qualified to
evaluate Plaintiff's impairments and to form conclusions about her
physical symptoms, conditions, and resulting limitations because
he "has program knowledge regarding the evaluation of the medical
issues in disability claims under the Social Security Act and he
is familiar with the entire file in this case." (Id.).

After reviewing the record at length, the Court agrees that
many of the limitations listed by Dr. Harris are excessive and
inconsistent with the record evidence. First, as the ALJ noted,
Dr. Harris's opinions are inconsistent with his own examination
findings, including full range of motion of the neck, shoulders,
elbows, wrists, fingers, hips, knees, and ankles, only a slight
decrease in lumbar range of motion, minimal tenderness to palpation
of the hand joints, no redness, heat, or joint swelling, normal

gait, normal sensation, 1+ and equal reflexes in all extremities, and the ability to toe-and-heel walk and to squat and arise. (See id. at 31, 998-99). In addition, his opinions lack any detailed explanation and merely attribute the extreme limitations to "polyarticular pain" or "back pain" with no further explanation or objective medical evidence. (See id. at 1000-05).

Further, a number of Dr. Harris's opinions are contradicted by Plaintiff's own statements. For example, he opined that Plaintiff is unable to prepare a simple meal and feed herself; however, Plaintiff, who lives with her two young children, reported that she can prepare simple meals, in addition to doing household chores such as sweeping, mopping, vacuuming, making a bed, cleaning a bathroom, washing dishes, and ironing. (Id. at 63-64, 282, 1005, 1009). Additionally, Dr. Harris opined that Plaintiff can only sit for fifteen minutes at a time, while Plaintiff testified that she travels to Birmingham every other week and can sit "[m]aybe like an hour" before she gets stiff and has to "switch up." (Id. at 60, 1001). Dr. Harris opined that Plaintiff can never lift or carry more than ten pounds, whereas Plaintiff reported that she could lift twenty pounds but "it'd be hard." (Id. at 59, 1000). Dr. Harris also opined that Plaintiff cannot travel without a companion for assistance; however, Plaintiff testified that she goes out to eat with her children, and that on a typical day, she "gets the kids off to school and then come[s] home[.]" (Id. at

65, 1005).  His statement that Plaintiff is unable to shop is belied by Plaintiff's own reports that she shops in stores for food and goes to Wal-Mart without difficulty.  (See id. at 283, 1005, 1009).

Dr. Harris's opinions are also inconsistent with the other medical evidence of record.  For example, Dr. Harris opined that Plaintiff can only operate foot controls occasionally due to back pain.  (Id. at 1002).  However, the treatment records reflect only intermittent complaints of back pain and largely normal examination and radiology findings relating to Plaintiff's back. For instance, during Plaintiff's admission to Mobile Infirmary for severe headaches in February 2014, it was noted that Plaintiff "gets Lortab for chronic back pain."  (Id. at 369).  However, a review of her systems was negative for back pain, myalgias, and arthralgias, and a physical examination on admission was normal, except for a notation of dizziness with standing.  (Id. at 376-77).  A neurologic examination by Charles S. Markle, M.D. produced some positive findings, including positive clonus, slight swaying with testing of Romberg, a tendency not to bear weight on the right leg, and a level change around T4-T5, although Dr. Markle also noted full and equal strength in all extremities and no ataxic movement on the heel-to-shin test.  (Id. at 383).  Dr. Markle ordered MRIs of Plaintiff's cervical and thoracic spine, both of which were unremarkable.  (Id. at 384, 388-89).

During visits to internist Otis Harrison, M.D. in late 2013 and early 2014, Plaintiff reported back pain, and Dr. Harrison noted lower back pain with range of motion on examination. (Id. at 418-19, 421-22, 424, 428-429, 431). However, Plaintiff demonstrated normal gait, normal station and stability, symmetrical and equal reflexes, and normal sensory examinations during those visits. (Id. at 419, 421, 424, 431). Also, during Plaintiff's initial visit to rheumatologist James Lawrence, M.D. on August 1, 2014, and at some subsequent visits, the review of systems was positive for back pain, but all physical examinations of Plaintiff's spine by Dr. Lawrence were normal. (Id. at 550-51, 656, 661, 667-68, 673).

During two dates of treatment with neurologist Ozgur Oztas, M.D. in September 2015, Plaintiff's complaints also included back pain. (Id. at 777, 786). On both occasions, Dr. Oztas performed detailed neurologic exams, which revealed normal gait, normal posture, no paraspinal muscle spasm, normal strength in all extremities, normal sensation in all extremities, normal reflexes in all extremities, the absence of clonus, and the absence of inconsistent behavioral responses. (Id. at 778-79, 787-88).

On March 31, 2016, Plaintiff presented to Mobile Infirmary with back pain. (Id. at 866). Plaintiff reported that the pain occurred intermittently and was "a new problem." (Id.). A physical examination showed no musculoskeletal tenderness and was

unremarkable, except for findings of facial swelling and hives on Plaintiff's arms. (Id. at 867). Plaintiff was assessed with allergic urticaria and systemic lupus erythematosus related syndrome. (Id. at 869).

Although Plaintiff's voluminous medical records contain intermittent reports of back pain and some positive examination findings pertaining to her back and legs, the objective evidence pertaining to Plaintiff's back complaints is overwhelmingly normal. As noted, MRIs of Plaintiff's cervical and thoracic spine were unremarkable. (Id. at 388-89). Musculoskeletal and neurologic examinations typically revealed normal range of motion, normal gait and station, normal movement, normal coordination, no clubbing, cyanosis, or edema, normal lower extremity strength, equal and symmetrical reflexes, normal motor activity, intact nerves, and intact sensation. (See id. at 370, 377, 393, 399, 414, 447, 478, 487, 491, 551, 573, 586, 602, 608, 610, 625, 630-31, 656, 661-62, 667-68, 673-74, 678, 692, 712, 714, 737, 744, 756, 761, 764, 778-79, 792-93, 795, 813, 819-20, 846, 855, 867, 873, 880, 891, 897, 904-05, 912, 934, 974, 983, 989, 993, 1010, 1024, 1052). Accordingly, Dr. Harris's limitation of Plaintiff to occasional operation of foot controls due to back pain is inconsistent with the bulk of the medical evidence.

The objective medical evidence also fails to support Dr. Harris's severe restrictions allegedly caused by "polyarticular

pain." There is no question that Plaintiff has frequently complained of joint pain and muscle pain in various parts of the body, as well as generalized pain, and has reported associated dizziness, fatigue, and weakness. Plaintiff has also alleged difficulty using her hands due to pain and weakness. (See id. at 59, 296-98). On August 18, 2014, Dr. Lawrence noted that all of Plaintiff's lab tests indicating lupus were clearly positive and diagnosed her with definite systemic lupus, and positive lab results were noted in July 2017 as well. (Id. at 681, 1052).

Further, physical examinations of Plaintiff did, on occasion, produce findings of slightly decreased grip, positive clonus, slight swaying on Romberg testing, right leg weakness, edema, muscle weakness, unequal sensation, tenderness, lower back pain with range of motion, pain and swelling in both hands, bilateral wrist pain, bilateral knee pain, mild synovitis of the knees, urticarial type rash, lesions, facial swelling, and hives. (Id. at 383, 410, 419, 424, 431, 465, 499, 505, 551-52, 561, 683, 689, 729, 767, 804-05, 815, 867, 880, 884, 906, 926, 965, 998). More frequently, however, Plaintiff's physical examinations produced normal findings, such as normal range of motion, no clubbing, no cyanosis, no edema, no tenderness, normal strength, equal strength, negative Romberg's sign, intact cranial nerves, no sensory deficit, normal reflexes, equal reflexes, symmetrical reflexes, normal gait, normal station, normal stability, good

movement, normal coordination, no knee joint swelling, normal spine, normal back curvature, normal knees, normal feet/ankles, normal shoulders, normal elbows, normal hands, normal hips, normal ribs, normal pelvis, normal monofilament exam, no calf tenderness, negative Hoffman's sign, no fistula, normal pulses, normal fine motor skills, normal Babinski sign, no paraspinal muscle spasm, no clonus, normal joints, full and painless range of motion of all joints of the extremities, no warmth to joints, ability to toe-and-heel walk, ability to squat and arise, no evidence of redness or heat in the joints, and good ambulation. (Id. at 370, 377, 383, 393, 399, 410, 414, 419, 424, 431, 447, 465, 487, 491, 499, 505, 531, 551, 573, 586, 608, 610, 625, 656, 661-62, 667-68, 673-74, 678, 689, 692, 712, 714, 729, 737, 744, 751, 756, 761, 764, 778-79, 787-88, 792-93, 795, 813, 820, 846, 855, 867, 873, 880, 884, 891, 897, 904-05, 912, 926, 934, 964-65, 974, 983, 989, 993, 998-99, 1010, 1024, 1052).

Although the record reflects that Plaintiff visited the emergency room frequently with various complaints, including headaches, nausea, abdominal pain, chest pain, generalized pain and weakness, dizziness, back pain, shoulder pain, and hip pain, and often reported severe levels of pain to her medical providers, Plaintiff's medical records contain a number of assessments of drug-seeking behavior and opioid dependency, along with suggestions that some of Plaintiff's symptoms were the result of

narcotics withdrawal. (See id. at 394, 484-85, 487-88, 490, 537, 766, 776, 836, 840, 875, 886, 930, 990).

For example, on July 9, 2014, Plaintiff's doctor at Mobile Infirmary Medical Center noted that Plaintiff had "been focused on receiving pain medication throughout her stay this evening, this raises the issue of drug seeking behavior." (Id. at 490). Three days later, Plaintiff walked out of that facility against medical advice when her treating gastroenterologist did not want to increase her pain medication, stating that she was going to another hospital because the doctor would not give her Dilaudid. (Id. at 484-85). That same evening, Plaintiff presented to USA Medical Center and requested intravenous narcotics. (Id. at 530, 537). In August 2015, Plaintiff presented to Mobile Infirmary Medical Center complaining of an excruciating frontal headache. (Id. at 767). A CT scan of the head/brain was unremarkable, and it was noted that Plaintiff "has a history of severe polysubstance abuse including Klonopin, Norco, and Percocet. A lot of her headaches are probably rebound in etiology due to severe substance abuse." (Id. at 766, 769). On discharge, Plaintiff's diagnoses included severe polysubstance abuse and chronic pain syndrome with opioid dependency. (Id.). On December 2, 2016, at a visit to establish a primary care provider at Franklin Primary Health Center, Plaintiff falsely stated that she had not taken any medications within a year and requested medication. (See id. at 926, 930,

987).

Much like Plaintiff's physical examination findings, the results of radiology studies taken during Plaintiff's numerous hospitalizations frequently did not corroborate her subjective complaints. During multiple hospital admissions where Plaintiff complained of pain, headaches, nausea, weakness, or dizziness, imaging studies of her head/brain were negative or unremarkable, as were MRIs of Plaintiff's cervical spine and thoracic spine. (See id. at 367, 378, 386-89, 393, 401, 453, 480, 767, 769, 854, 857, 864, 890, 894, 896, 900). Studies taken after Plaintiff complained of chest pain were also overwhelmingly normal. (See id. at 484, 493-96, 585, 589, 833-34, 847, 888, 901, 970, 975-76, 1022). Knee x-rays taken on February 19, 2013 were normal and showed no arthropathic changes. (Id. at 459-60). On January 8, 2017, Plaintiff presented to USA Medical Center complaining of right hip pain and rash. (Id. at 936). Radiological views of the right hip showed no evidence of acute fracture or dislocation, and soft tissues were unremarkable. (Id. at 940). Plaintiff then presented to Mobile Infirmary Medical Center on January 10, 2017, also complaining of right hip pain. (Id. at 963). A pelvis/hip x-ray taken there on January 11, 2017 revealed no acute findings. (Id. at 965).

As noted, Plaintiff's rheumatologist, Dr. Lawrence, diagnosed Plaintiff with definite systemic lupus based on her lab results.

(Id. at 671, 681).  However, on November 19, 2014, Dr. Lawrence's physical examination of Plaintiff was completely normal, and he stated: "Her systemic lupus appears very stable today.  I see no skin lesions and no joint swelling." (Id. at 674).  Dr. Lawrence's examination of Plaintiff in February 2015 was also completely normal except for a finding of anxiety, notwithstanding Plaintiff's report of 10/10 pain. (Id. at 667-68).  In April 2015, Dr. Lawrence again noted uniformly normal examination findings despite Plaintiff's report of 10/10 pain and recent hospitalizations for generalized pain. (Id. at 659, 661-62).  He assessed Plaintiff with central pain syndrome and stated that "I do not really think I have seen any lupus symptoms." (Id. at 659, 662).  On August 3, 2015, Dr. Lawrence stated that he had no sense of why Plaintiff was having pain, unless it was fibromyalgia. (Id. at 823).  On March 3, 2016, Plaintiff stormed out of the examination room and Dr. Lawrence terminated his care of Plaintiff, stating that "[w]e have been very patient an[d] understanding in this case and I feel no longer able to provide a [sic] care she needs." (Id. at 801).  Dr. Lawrence further noted: "At home she stays in bed all day and her significant other usually cares for their child.  We have never seen a reason for that in terms of Lupus activity that wo[u]ld be a reason to be in[]bed all day." (Id.).

Plaintiff was first seen on March 3, 2017 by her new

rheumatologist, Samir Ramesh Dalvi, M.D. of The Kirklin Clinic of UAB Hospital. (Id. at 991). She reported that her main issue was joint pain/myalgia and stated that her whole body was tender to the touch. (Id.). However, on examination, Dr. Dalvi noted normal range of motion, normal strength, and no tenderness. (Id. at 993). Dr. Dalvi saw no evidence to suggest active lupus, such as synovitis, oral apthae, or rashes, and he stated that he suspected Plaintiff's symptoms were related to a non-inflammatory pain syndrome such as fibromyalgia. (Id.). He suggested nonpharmacologic treatment, such as sleep hygiene and gentle exercise including stretching and heated pool therapy. (Id.). At a follow-up on July 20, 2017, Dr. Dalvi noted that Plaintiff's labs were positive for Anti/SSA and low C3 levels, and that she had mild active skin disease with hyperpigmented lesions in the malar area and left upper shoulder. (Id. at 1052). However, Plaintiff's physical examination again showed normal range of motion, normal strength, and no tenderness. (Id. at 1052).

The record also reflects that Plaintiff was able to exercise during the relevant period. On February 4, 2015, Dr. Lawrence stated that "[s]he is fine exercise [sic] but she keeps been [sic] hospitalized for . . . pains which I believe to be secondary fibromyalgia." (Id. at 665). On September 3, 2015, and again on September 23, 2015, Dr. Oztas noted that Plaintiff exercised by swimming three to four times per week. (Id. at 777, 786). Also,

Dr. Dalvi encouraged Plaintiff to perform gentle exercise to help alleviate her symptoms.  (Id. at 993).

In view of the foregoing, the undersigned finds that the ALJ had ample cause to reject the extreme physical limitations set forth in Dr. Harris's medical source statement, and that the ALJ articulated a number of valid reasons for according Dr. Harris's opinions little weight.  With regard to Dr. Duby, Plaintiff points to no specific opinions that were unsupported by or inconsistent with the record evidence.  After reviewing the record at length, the Court finds that Dr. Duby's opinions were, as a whole, consistent with the medical record, particularly the objective evidence, and that substantial evidence supports Dr. Duby's opinions.  Thus, the ALJ did not err in assigning great weight to Dr. Duby's opinions while according little weight to the excessive limitations listed by Dr. Harris.  Accordingly, Plaintiff's claim must fail.

**VIII.**    **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **30th** day of **March, 2020.**

**/s/ SONJA F. BIVINS**

**UNITED STATES MAGISTRATE JUDGE**
